Good morning. Good morning. I'd like to reserve two minutes. That's fine. Trevon Barcus was a Tier 3 sex offender for an offense he committed when he was 19 years old. That classification subjects him to federal prosecution, conviction and enhanced sentence, not just in this case but for the rest of his life. The conviction that triggered all of this, Tennessee aggravated sexual attempted aggravated sexual battery, is not in fact a Tier 3 sex offense. Mr. Barcus made a couple of arguments in his briefs about why that particular conviction does not qualify as a Tier 3 sex offense. I'd like to focus first, if I may, on the fact that it was an attempted conviction under Tennessee law. And I say this because we're here on plain error review. And what must be true is that it is without doubt, it is not open to question, that Tennessee attempt sweeps more broadly than federal generic attempt. We know this because the Tennessee Supreme Court has told us we have authoritative Tennessee law that makes it clear that under Tennessee law, a substantial step requires less proof on the part of the government than for purposes of federal generic attempt. For federal attempt, the test is a substantial step. That word is the same as the word in Tennessee under Tennessee law. Federal generic attempt requires proof not only that there's more than mere preparation, but also that, and I'd like to say it in particular, a substantial step occurs when a defendant's actions unequivocally demonstrate that the crime will take place unless interrupted by independent circumstances. This test is known as the probable desistance test. Tennessee has rejected the probable desistance test, much like New Jersey. When it adopted by statute a substantial step formulation, it borrowed from and based it on the model penal code. The model penal code, as we know from the drafters, expressly rejected the probable desistance test and also indicated it expected that by changing the formulation to something that had not previously existed, it would be expanding the scope of liability for attempt. In Reeves, the Tennessee Supreme Court said we are now rejecting our older test, which would not have permitted any conviction for attempt based on mere preparation. We now are using this test that was adopted by the legislature, which was based on the model penal code, and under that test, mere preparation will suffice, not in every case, but in some cases. That's enough to make it so that in Tennessee a person can be convicted for attempt based on lower proof than what is required for purposes of federal generic attempt. What this means is that when Treven Barkus was convicted of attempted aggravated sexual battery, when you look at what that means, when you just look at the fact, when you look at the fact that his conviction sweeps more broadly than the definition of the offense that would qualify him as a tier 3 sex offender. The government, in its brief, has not actually said that there is no such thing as a probable desistance test in federal generic attempt and, in fact, all the case law says that that's true. So we're at a point where the error is plain. There is no question that a Tennessee attempt sweeps more broadly than a federal attempt. And for that reason, Mr. Barkus' sex offense is only a tier 1 sex offense. What that means is his guideline range was miscalculated and it was plain error. And for that reason, this court should hold that his guideline range was miscalculated and it was plain error. The next thing that, the second issue that I'd like to, well before I move on to the second issue, I'd like to also say there's an alternative reason for why his conviction doesn't qualify as a tier 3 sex offense. And that is also, that's because of another part of the comparative definitions between the Sornet offense and the Tennessee offense. And that is that the term, and the government and Mr. Barkus went back and forth, but it really comes down to one thing. Does the Tennessee definition of sexual contact, is it comparable to the definition for sexual contact under federal law? And as Mr. Barkus has shown in his briefs, in fact, in Tennessee, sexual contact is defined more broadly than sexual contact for purposes of federal law because in Tennessee, there's no requirement that the government actually proves specific, that the contact was specifically done for the purpose of arousing sexual gratification. I'm sorry, I don't remember the example. This is the reasonably construed Tennessee statute. Exactly, right. Then there's Tennessee Court of Criminal Appeals decisions that explicitly say there's no requirement that the government prove that the contact was for the purpose of sexual gratification. Faced with that language, a defendant who says I touched, my touching was not intended for that, it was by accident, that explicit language in the Court of Criminal Appeals is going to send a message to that defendant they should be pleading guilty. What that means is that the statute sweeps a wide net, casts a very wide net, and it's wider than what is required for purposes of federal law. One of the examples which would demonstrate, I guess, the breadth of the Tennessee law would be the case where there was the robbery and the robber touched the breast of someone during the course of the robbery. That would qualify under the Tennessee rule, right? Under federal law, the government would have to prove that there was specific intent that the robber did that for the purpose of sexual gratification. Of course, our position would be that that would never fly in federal court. So, because I have several issues, I'd like to move on if I may. The next thing I'd like to talk about has to do with the two additional criminal history points that are imposed when a person is under a criminal justice sentence. In this case, those two points were added because Trevin Barkus, by virtue of his conviction for attempted aggravated sexual battery, he is subject to what is called community supervision for life. It sounds a lot like supervision, but by statute, it's automatic. It's triggered automatically by the moment he pleads guilty to that offense. And there's nothing in the statute that requires supervision, and there was nothing by the record of conviction that tells us that he was under any kind of supervision. The problem here is not so much the question whether there could be a supervisory component to this kind of supervision. It's that it occurs in every case. It's a presumption. It's a presumption that Mr. Barkus and those who are automatically placed on community supervision represent a greater risk of recidivism. How do we know that that's a presumption? Because the Sensing Commission has told us, and in fact, I didn't cite it in my brief, but in the introductory comment to Chapter 4 of the Guidelines, it actually tells us that each one of the components of the criminal history score is intended to correlate with risk of recidivism. So they tell us this, and they also say that they're not committed to what they are now, and they're going to revisit these things as more knowledge becomes known. That was in 1987, and this particular provision has not been revisited since the state started passing these laws that made it so that certain people could be automatically subject to community supervision for the rest of their lives. The presumption, and the point here is that the presumption is actually based on a false premise, or at least highly questionable. It comes very close to being an automatic enhancement to your punishment based on a false assumption, and that raises serious due process concerns. And it's going to last really for as long as he ever has a conviction that's countable, will automatically get two additional points in the absence of any evidence whatsoever that these two points were intended to encompass people like him. And there's widely available information that tells us that sex offenders and those who are subject to community supervision because they're a sex offender or registration requirements, they don't actually present a greater risk of recidivism, and in fact, they may present less of a risk. Very recently, even this court, and I think it was 20, it might have even been 2016, Judge Donald, you were on the panel, and the Doe's numbers one and five versus Snyder, it explicitly recognizes that any assumption about sex offenders is likely to be demonstrably untrue. And when we have a guideline that requires a district court to enhance sentence or at least calculate the guideline range based on something that is possibly demonstrably untrue, we have what looks like close to a due process problem. And Mr. Bargus's argument here is that this court should not require district courts to do that. There should be some kind of individualized determination before we add these two points. If you're successful here, which is the SORNA charge, that wouldn't necessarily remove the supervision for life provision. No, it would not. What I'm arguing is that he should not, a person who's under community supervision for life that's automatically triggered should not get extra criminal history points. Which raises my next question, which is the same one I asked an earlier group this morning. If you're successful, what relief are you asking for? So in Mr. Bargus's case, it would mean that his guideline range is calculated without those two criminal history points, which takes him down one criminal history category, reduces his guideline range from 30 to 37, to 24 to 30 months. That doesn't, he's already out of jail. No, he isn't? He's still in jail? Oh, okay, I'm sorry, I thought he was out. No, he's in. Doesn't your argument hinge upon, I understand to some extent that this is maybe unfair and the same situation, but aren't we just bound by the guidelines and the commentary here? Your argument really is that maybe those should be changed, right? That really Tennessee community supervision for life is a criminal justice sentence, and how do we get around that given the commentary to the guidelines? Well, my answer to that would be two things, and those would be two Supreme Court decisions. The first is Labonte, the second one is Stinson, which I already mentioned in my brief. So a guideline can't actually be in conflict with statute or the Constitution. We know this from Labonte. There's a directive in the Organic Act for the Sentencing Commission, it's at Section 991 of Title 28, that tells the Sentencing Commission that it's supposed to develop the guidelines that reflect advancements in knowledge about human behavior as it relates to the criminal justice system. And in that introductory paragraph before it says, we recognize that our current empirical evidence says that these factors correlate to increased risk of recidivism, it was in 1987, and now all of these years later when there is manifest empirical evidence that shows us that that is not true about sex offenders and those who are on a criminal justice system automatically by statute for like this particular case, that they have not actually done, that this particular provision is in conflict with that. The second thing is the due process problem. It is a due process violation for a sentence to be based on false assumptions, false information, demonstrably untrue information. That's Townsend v. Burke. That's due process in sentencing absolute. So this Court is not bound by a guideline that violates the Constitution, raises a serious Constitutional issue. You could interpret it to mean something different in order to avoid that. And also the fact that it also is somewhat in conflict with this statute. This is not an ordinary situation where it looks just like a policy question, it's a value judgment, the Commission might make a different decision. This is where a guideline has been expressly stated is based on a risk of recidivism, but that's not true. Could you take just one minute to address your third concern because your time has expired. Okay, so I think... Let's see if we have any questions. Thank you very much. You can take a minute. The last thing I'd like to say, and it's really just one point and it's really the nub of it, has to do with the imposition of mental health treatment plus sex offender treatment conditions for Mr. Barkas. Mr. Barkas's position is that mental health treatment is sufficient to address his mental health issues and that this is not a case where he needs both. And the last thing I'd like to say is that there's not one case, not cited by Mr. Barkas, not by the government, in which the defendant at sentencing received both mental health treatment and sexual offender mental health treatment. It's the cumulative effect of both of these. When one would be sufficient, doing both is a greater deprivation than necessary. Okay. Thank you. Ms. Brenneman. May it please the court. Deborah Brenneman for the United States. I'm really glad Opposing Counsel opened by talking about this attempt standard because in rereading the briefs, I realized that that's the area that, at least in their view, we didn't adequately appreciate or address their concerns. So I wanted to make sure that we're clear for you about what their position is. In our view, there is no meaningful distinction between the federal definition of attempt or substantial step and the Tennessee definition of substantial step. There's a couple of reasons for that. I'm going to start with the model penal code, which of course defines a substantial step by saying that something is not a substantial step unless it is strongly corroborative of the actor's criminal purpose. That is the phrase that this court uses most often. This court defines a substantial step as something that is strongly corroborative of a defendant's criminal intent, something that marks his conduct as criminal. Those are the phrases this court uses. It referenced the probable desistance standard, which the model penal code rejected. In fact, their reply brief, page seven, describes that as the hallmark of the substantial step standard. And yet this court has never used that phrase to describe attempt. Instead, this court is looking at what strongly corroborates an actor's criminal purpose. If we look at the Tennessee case that defines exactly how attempt is interpreted, the Reeves case, it was rejecting an old interpretation. And prior to the 1989 revision of the Tennessee criminal code, Tennessee courts had divided, looking at attempt, they divided things into two categories, what they called mere preparation and the act itself. Everything other than the act itself was defined as mere preparation. Reeves talks about an extreme example of that on page 911 of the court's opinion in Reeves. It was a case in which because the act had not happened, it was a case that involved illegal abortions, and because the pharmacist who had admitted that he had performed abortions in the past had a person in the office, on the court, the Tennessee courts had said, we have to reverse the conviction. It isn't actually an attempt. They drew this line prior to the revision of the Tennessee code. Everything other than the act itself was mere preparation. So in Reeves, the court said, we need to recalibrate this, because there's a long continuum between thinking about doing a crime and actually starting to do the crime. And by changing that continuum, they gave a particular example in that case of actions that were more than mere preparation, but less than the extreme definition of mere preparation they had previously used. It's our view that the Tennessee Supreme Court's interpretation of the mere preparation standard parallels the federal definition of that. As this court held in Bilderbeck, for example, attempt is to be construed in a broad, all-inclusive manner. It's fact-specific. It's dependent on the circumstances of the case. And again, this is not referenced in our brief. I'm sorry about that. It's the Wesley case from this court in 2005. It's 417F3-612. I didn't realize this would be valuable until, of course, seeing their reply brief. That was a case involving bank robbery. And the examples of substantial steps included recorded statements of a defendant planning a bank robbery, recruiting someone to be his getaway driver, mapping out the route by which they would flee the bank after the fact. And the defendant argued, that's just mere preparation. When you actually arrested me, I was at my house. I didn't have any weapons. I didn't have any disguises. I was an hour away from the bank. That only amounted to preparation. And this court said, no, you did enough things for us to be confident that your criminal intent was fixed. You would have eventually done this. We don't have this requirement of inevitability of the crime. The language of probable desistance, to my knowledge, only the Ninth Circuit has used that phrase, and only infrequently. Instead, this court ordinarily uses the same language that's found in the MBC, which is the same language that was adopted by the Tennessee court. In our view, there's no meaningful distinction between the federal and the Tennessee definitions of the substantial step or of attempt. If we move on to the next argument, why doesn't the Tennessee statute criminalize different conduct? Because the reasonably construed element does not ask the jury to determine a defendant's actual intent, whereas it does in the Tier 3 federal situation. So it would agree that the language is not identical, but the type of proof that would be involved in both cases would be identical. And I think it's worth clarifying what analytical framework this court is using. Our brief reference is the categorical approach, which may be too specific. It is a categorical approach in that we're comparing the elements of two offenses. But it's not the categorical approach in the way the courts have interpreted it in the courts at Imathas. We're looking for a categorical match. We're not looking for a match in this context because the statute says we're looking for something that is comparable to or more severe than. And so we're looking at something that involves severity as opposed to the exact breadth of the elements. So although the language may not be identical, I think we're still well within the definition of what counts as a comparable offense under SORNA. If one has an intent requirement and one does not, wouldn't that be a substantial difference between the two, no matter what kind of categorical framework that you employ? Well there is an intent requirement for Tennessee aggravated sexual battery. But there's a separate intent element as to different portions. For example, the touching must be intentional. The defendant's knowledge of the victim's age, for example, does not. It could be merely reckless. So there's a different standard of intent for those different standards. If evidence can be reasonably construed as proving an intent or a purpose, then I would submit that is the same evidence that actually establishes intent. If both require, to use your argument, an intent, but they require different standards of intent, as you just said, that still would not give you an incongruity such that you lose? I don't think so. I think it's still close enough under this comparable standard. We have a little more flexibility here than the precise categorical match we're looking for under Mathis. Again, this Court, of course, is reviewing only for plain error. Again, if this Court reviews the issue at all, I note the defendant said below, and this is record 29, page ID 209, he said, it appears my classification as a tier 3 offender is correct. So he agreed to this. And he withdrew his prior objection. And given the, I realize that there's a lot of moving parts in how to analyze these individual elements and compare the statutes and look at all of those things, but I would submit that on this record, the District Court did not plainly err in calculating the guideline range. It correctly calculated the guideline range. It sentenced the defendant to a term of imprisonment at the bottom of that range, followed by the shortest statutorily authorized term of supervised release. And we believe that the Court reasonably exercised its discretion in selecting several special conditions of release. Obviously, this Court might disagree about what conditions would be best suited for this particular defendant, but that's a decision that's left for the District Court in the first instance. And we think the District Court acted within its discretion. Unless you have further questions, I'm happy to rest on my brief. But in addition to the conditions, if your opponent gets the relief she seeks, it would affect the length of incarceration, wouldn't it? If this Court were to find either that the Court miscalculated the guideline range based on the propriety of his tier classification under SORNA or the two criminal history points, then yes, that would be a procedural error, and it would require remand for resentment. The supervision argument would affect the under supervision would affect the sentence, the guideline calculation. Well, the reasonableness of the special conditions would not necessarily affect the term of imprisonment. I don't think that affects the guideline range. Maybe I misunderstood your question.  Oh, yes, that part. That involves the calculation of the two criminal history points. That does affect his guideline range. And if the Court finds that those do not apply... Right now his concern is getting out of prison. He doesn't have to worry about the conditions until he gets out of prison. I understand. It's my understanding that his term of imprisonment expires in January of next year. That's my recollection. So I believe he is still incarcerated at this point. It would be a minor difference in his guideline range. But yes, if this Court were to find that the District Court erred, a remand for resentencing would be the appropriate remedy. In our view, there's no reversible error here or any error whatsoever. Thank you. Thank you. Does the tier that you're in specifically affect the conditions that the Court can impose? Not that I'm aware of. Theoretically, if he was Tier 1, he could have had all these same conditions imposed. In terms of the conditions of supervised release? Yes. But it affects the offense level, right? Yes. It increased his offense level by four levels. It also affects how long he's subject to federal prosecution for failing to register. And if he were Tier 1, I think it's 15 years. And if he's Tier 3, it's for life. I would say, and I only have a few minutes here, but the fact that this determination has that kind of an effect on a person for the rest of their lives actually weighs toward using a categorical approach to be absolutely sure that the offense of conviction itself, the fact of it, subjects him to that kind of federal control for the rest of his life and state control for the rest of his life. I just want to also point out a couple things, one about attempt. The standard stated by this Court, although it doesn't call it probable desistance, it uses almost the identical words. The defendant's conduct taken as a whole must unequivocally corroborate the required subjective intent. That comes from several different, that's Pennyman, I believe, and several other cases have said that. That is the probable desistance test in operation. If the Court says that's not part of federal generic attempt, then we're creating a circuit split with the Ninth Circuit. We now have two different definitions of what generic attempt is. Well, one of the problems in this case that doesn't affect your argument or anything is that we're arguing about the characteristics of a crime that he didn't commit. This was a plea bargain is how he arrived at this. Essentially, it was a statutory rape charge, wasn't it? Consensual sex with a minor. But when you plead, you get into this morass. And so that's what makes it difficult, because this is a case where we know precisely what he did. Well, we only, we don't know that by the record of the offense of conviction. The offense of conviction only tells us that. I understand that, but that's, for me at least, one of the problems with the categorical approach. Well, I can see that, but the categorical approach is exactly what protects him in these proceedings from having his sentence and punishment and prosecution at all depend on facts being found by a later federal judge based on a record that might or might not be complete. Perhaps none of that could have been proven. Had he actually gone to trial, maybe she wasn't really 12. Maybe she was 13. I mean, we don't know these things because that didn't happen. The only other thing I'd like to say about the categorical approach is just a few days ago the Supreme Court again reiterated, if not reemphasized, that when a statute uses the word offense and convicted, it means that the categorical approach applies. That was in DiMaia two days ago, and it cited Nijuan V. Holder, which has the word offense in it. It cited Leocal. It cited Johnson. This is the law that was in place when Congress passed SORNA. And again, I would say that this must be especially true when we're talking about how long a human being is subject to the kind of federal control that SORNA and prosecution and punishment and enhanced punishment has over their lives. So I would ask the Court apply the categorical approach and find that he's not a tier three offender. Vacate his conviction and remand for re-sensing. Thank you very much. Okay. Thank you, Ms. Brenneman, Ms. Coffin. We appreciate your arguments this morning. The case will be submitted, and that, I think, completes our argument calendar, so you may adjourn court.